**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

Case No. _____ Civ (USDJ: _____/USMJ:_____)

| | |
|---|---|
| CHRISTIAN POPP,<br><br>               Plaintiff,<br><br>v.<br><br>AIR LINE PILOTS ASSOCIATION,<br>INTERNATIONAL,<br><br>               Defendant. | **CLASS ACTION** |

**COMPLAINT OF PLAINTIFF**
**Claim of Unconstitutionality**

**INTRODUCTION**

1. This lawsuit seeks to enjoin a labor union from requiring its nonmembers to affirmatively opt-out of paying union fees which they have no legal obligation to pay. The Railway Labor Act and First Amendment protect the rights of airline employees to choose not to join the union or pay it union fees that are unrelated to collective bargaining, such as union spending on politics, organizing and other ideological activities ("nonchargeable"). Yet the Air Line Pilots Association, International ("ALPA") burdens the exercise of these rights by requiring nonmembers to pay the same amount that voluntary members pay in dues which are spent not only on collective bargaining, but also on politics, organizing, and other ideological activities. It then forces nonmembers to opt-out in writing of paying for union fees that are nonchargeable.

1

Nonmembers who fail to submit a written opt-out are compelled to pay for and support all of ALPA's nonchargeable activities.

2.   In *Knox v. SEIU, Local 1000*, the U.S. Supreme Court found that opt-out requirements burden the exercise of the right not to pay for nonchargeable spending. 567 U.S. 298, 312 (2012). On June 27, 2018, in *Janus v. AFSCME, Council 31*, the U.S. Supreme Court held that opt-out requirements violate the First Amendment because a waiver of rights "cannot be presumed." _ U.S. __, 138 S. Ct. 2448, 2486 (2018). Instead, unions must receive nonmembers' affirmative consent to charge them for their nonchargeable spending. *Id.*

3.   ALPA's opt-out requirements violate the RLA by burdening the exercise of the right not to pay for a union's nonchargeable spending. Alternatively, if the RLA permits opt-out requirements, then the RLA violates the First Amendment. ALPA's opt-out requirements also breach the duty of fair representation.

4.   Plaintiff Christian Popp is a pilot for JetBlue Airways Corporation ("JetBlue") and a nonmember of ALPA. He seeks to represent a class of other nonmembers whom ALPA forced to opt-out in order to avoid paying the nonchargeable union fees that they had no legal obligation to pay in the first place.

## JURISDICTION AND VENUE

5.   Plaintiff's claims arise under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and the First Amendment to the U.S. Constitution. Thus, this Court has jurisdiction over this action according to 28 U.S.C. §§ 1331 (federal question) and 1337 (interstate commerce). According to 28 U.S.C. §§ 2201 and 2202, the Court may declare Plaintiff's rights. Venue is proper in this Court according to 28 U.S.C. § 1391 because Plaintiff's claims arose in this district.

## PARTIES

6.   Plaintiff Popp is an "employee" of JetBlue within the meaning of RLA, 45 U.S.C. §§ 151, 181. JetBlue is a "carrier" within the meaning of RLA, 45 U.S.C. § 181.

7.   Defendant ALPA is a "representative" within the meaning of 45 U.S.C. § 151, Sixth and is the exclusive bargaining representative for Plaintiff under 45 U.S.C. § 152, Ninth, despite his decision to reject membership in ALPA.

## FACTS

8.   Defendant ALPA is a labor union that exclusively represents a nation-wide craft/class of pilots who work for JetBlue. Plaintiff Popp falls within this craft/class because he works for JetBlue as a pilot.

9.   Under the Railway Labor Act, ALPA's status as the pilots' exclusive representative means ALPA has a legal right to demand that JetBlue negotiate only with it for the pilots' terms and conditions of employment, including their wages. 45 U.S.C. § 152; *Virginian. Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 548 (1937). ALPA's exclusive representative status forecloses JetBlue's ability to negotiate with ALPA's nonmembers, i.e., employees who fall within the "craft/class" that ALPA represents but who chose not to sign up for union membership. *Id.* As a result, the RLA forces nonmembers to accept ALPA's representation and extinguishes their individual right to deal directly with their employer. *Steele v. Louisville & Nashville R.R. Co..*, 323 U.S. 192, 202 (1944); *c.f. N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967) ("The employee may disagree with many of the union decisions but is bound by them.").

10. The RLA also empowers exclusive representatives, like ALPA, to maintain a "union security" agreement, which legally requires employers to terminate employees who fail to join

the union as a full member or pay union fees ("forced fees") as a nonmember. RLA Section 2, Eleventh, 45 U.S.C. § 152, Eleventh. Thus, employees subject to a forced fees agreement made between their union and employer must join the union as a full member, pay union fees as a nonmember, or be fired.

11. Yet unions spend large sums of money on politics and "'advocate political ideas, support political candidates, and advance national economic concepts which may or may not be of an employee's choice.'" *Machinists v. Street*, 367 U.S. 740, 747 (1961) (quoting *Hanson v. Union Pac. R. Co.*, 71 N.W.2d 526, 546 (Neb. 1955), *rev'd on other grounds by Ry. Emps.' Dep't v. Hanson*, 351 U.S. 225 (1956)). They also spend money on organizing, which is money "spent on employees outside" a nonmember's immediate craft/class of employees, and other ideological activities. *Ellis v. Ry. Clerks*, 466 U.S. 435, 452 (1984).

12. As a result, the U.S. Supreme Court has repeatedly recognized that forced fees threaten individuals' freedom of speech, association, and thought because it forces them to fund private organizations (unions) "with political aspects." *Street*, 367 U.S. at 747. And this creates the risk that individuals will ultimately be forced to fund "political causes" which they may oppose. *Ellis*, 466 U.S. at 447 (quoting *Street*, 367 U.S. at 768).

13. To protect individual autonomy, the U.S. Supreme Court interprets the RLA and the First Amendment as allowing unions to compel nonmembers to pay union fees relating only to collectively bargaining with their employer. Thus, a union may not charge nonmembers for its spending on nonchargeable activities. *Street*, 367 U.S. at 764.

14. ALPA has a forced fees agreement with JetBlue which requires all employees, including its nonmembers, like Popp, to pay union dues-equivalent fees just to keep their jobs. If not preempted by the RLA, the Florida Right to Work law would void ALPA's forced fees

agreement in its entirety. Fla. Const. art. I, § 6; Fla. Stat. § 447.03.

15. On information and belief, ALPA spends millions of dollars per year on nonchargeable activities, including lobbying.

16. Even though nonmembers like Popp have no legal obligation to fund ALPA's involvement in any nonchargeable activity, ALPA automatically charges them fees for that nonchargeable spending. It charges them the same dues rate as employees who have chosen to join ALPA voluntarily. Only if nonmembers comply with the opt-out requirements in ALPA's agency fee policy ("forced fees policy"), which is attached as Exhibit A, will nonmembers' fees be reduced so that they do not pay for the union's spending on activities unrelated to collective bargaining.

17. According to ALPA's opt-out policy, nonmembers must do the following to opt-out, and thereby, maintain their political and ideological autonomy and avoid subsidizing non-bargaining spending:

    i.    Decipher ALPA's opt-out requirements;

    ii.    Plan and draft a written notice of objection;

    iii.    Reveal to ALPA in the objection notice the employee's name and address;

    iv.    Send the objection notice via either mail or email:

- If the employee sends the objection via mail, the employee must buy at least one envelope, find the address of ALPA; pay for sufficient postage to send the objection letter to ALPA (and ALPA's policy strongly encourages sending the letter via certified mail, which costs more money than regular mail);

- If the employee sends the objection via email, the email objection is valid only if the union acknowledges receipt and employees are encouraged to call the union if they do not receive an acknowledgement.

    v.    Send the objection notice within the calendar year to receive that year's reduction;

    vi.    Face having to send more objection notices in other calendar years unless the

employee states in the objection notice that the objection is permanent or continuing or manages to send objection notices in two consecutive calendar years.

18. Plaintiff Popp has not joined ALPA and does not wish to associate with it. Popp does not believe that he should have to do anything as a nonmember in order to exercise his statutory and First Amendment rights to refrain from paying union fees that ALPA spends on politics, lobbying, organizing, and other activities unrelated to collective bargaining.

19. But to avoid paying the same rate as full union members, Popp sent a letter to ALPA on or around December 3, 2018, which objected to paying for union fees unrelated to collective bargaining activities. Sending the objection letter to ALPA cost Popp $33.01 in fees he paid to the United Parcel Service.

20. On or around December 13, 2018, Popp received an email from ALPA, which acknowledged his objection and promised to reduce his fees by the amounts that are not legally chargeable to nonmembers.

## CLASS ACTION ALLEGATIONS

21. This is brought as a class action according to Federal Rule of Civil Procedure 23(b)(1)(A) and (b)(2), and alternatively, 23(b)(3), by Plaintiff for himself and for all others similarly situated.

22. The class for all counts consists of all former (employed at some point within the last six months of the filing of this complaint), current, and future nonmember employees within the meaning of RLA, 45 U.S.C. §§151, 181 who are, have been, or will be represented by ALPA and are, have been, or will be subject to ALPA's forced fees policies.

23. Upon information and belief, the number of persons in the class are so numerous and scattered throughout the United States that joinder is impracticable.

24. There are questions of law and fact common to all class members, including Plaintiff.

6

This includes whether ALPA's requirement that nonmembers opt-out of paying for its political, ideological, and other non-bargaining spending complies with the RLA, the First Amendment, and the duty of fair representation.

25. Plaintiff's claims are typical of the claims of other class members, who are subject to the same deprivations of their rights by ALPA's opt-out requirements. ALPA owes an identical duty with regard to these claims to Plaintiff and all other class members.

26. Plaintiff can adequately represent the interests of the class and has no conflict with other class members who are nonmembers of ALPA.

27. Because ALPA's compulsory fee practices and procedures apply equally to all class members, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for ALPA.

28. ALPA has acted, and continues to act, to deprive Plaintiff and each class member of their statutory and constitutional rights on grounds generally applicable to all, making appropriate declaratory, injunctive, and other equitable relief appropriate for all class members.

29. Alternatively, the questions of law or fact raised in this complaint about the statutory and constitutional rights of nonmembers of ALPA are common to the class members and predominate over any questions affecting only individual class members.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that individual class members are deprived of the same statutory and constitutional rights by ALPA's opt-out requirements, differing only in immaterial aspects of their factual situations. The limited amount of money at stake for each individual employee makes it burdensome for class members to maintain separate actions.

31. Plaintiff's attorneys are provided by a national charitable legal aid organization and are experienced in representing nonmember employees in federal litigation, having litigated many of the leading constitutional and statutory cases in this area of law, including class actions involving forced union fee issues identical or similar to those raised here and related to the class. These attorneys are best able to represent the interests of the class and will fairly and adequately do so.

## CLAIMS FOR RELIEF

### COUNT I
### (Compulsory Opt-Out Requirements Violate the Railway Labor Act)

32. The facts alleged above are incorporated here by reference.

33. The Railway Labor Act protects the rights of railway and airline employees to refuse to join a union and to otherwise disassociate from a union. These rights are in RLA, Section 2, Third, 45 U.S.C. § 152, which prohibits interfering, influencing or coercing employees in their choice of bargaining representatives, and RLA Section 2, Fourth, 45 U.S.C. § 152, which protects the right of employees to "join, organize, or assist in organizing" a union of their choice as well as the right to refrain from any of those activities.

34. Although Congress permitted unions to enter agreements with airlines that require employees to pay forced fees when it added RLA Section 2, 45 U.S.C. § 152, Eleventh, Congress did not alter the right of employees to refuse to pay union fees that are unrelated to a union's spending on collective bargaining activities, such as activities related to ideology, politics and other nonchargeable activities. 45 U.S.C. § 152; *Ellis* v. *Ry. Clerks,* 466 U.S. 435, 447-48 (1984); *Machinists v. Street*, 367 U.S. 740, 770 (1961).

35. The RLA prohibits union rules that burden employees' exercise of their RLA rights or that otherwise add requirements to the exercise of a RLA right that are "over and above" what the RLA requires. *Felter v. S. Pac. Co.*, 359 U.S. 326, 335 (1959).

8

36. Nothing in the RLA's text permits unions to require that employees affirmatively opt-out of paying forced fees that are unrelated to union spending on collective bargaining.

37. Opt-out requirements put a "burden" on employees' right to refrain from paying union fees that are unrelated to a union's spending on collective bargaining activities, including its spending on politics. *Knox v. SEIU, Local* 1000, 567 U.S. 298, 312 (2012). As the U.S. Supreme Court explained in *Knox*, a union's opt-out requirements create a risk that nonmembers' fees will go to "political and ideological ends with which they do not agree." *Id.* at 312. And that opt-out requirements irrationally conflict with the "probable preferences of most nonmembers," which is to refrain from paying fees they have no legal obligation to pay. *Id.*

38. In *Janus v. AFSCME, Council 31*, the U.S. Supreme Court held that nonmembers only pay for non-chargeable spending by waiving their rights not to pay those amounts and that a waiver of rights "cannot be presumed." _ U.S. __, 138 S. Ct. 2448, 2486 (2018) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

39. Therefore, opt-out requirements violate the RLA, Third, Fourth, and Eleventh, 45 U.S.C. § 152, by burdening employees' right to refrain from paying union fees that they have no legal obligation to pay. Unions also lack legal authority to impose opt-out requirements because those requirements go "over and above" what the RLA requires for exercising the right not to pay fees unrelated to collective bargaining. *Felter*, 359 U.S. at 335.

40. The RLA also prohibits unions from imposing opt-out requirements because the U.S. Supreme Court construes the RLA so as to avoid conflict with the First Amendment. In *Janus*, the U.S. Supreme Court expanded its criticism of union opt-out rules in *Knox* into a complete prohibition on opt-out requirements. 138 S. Ct. at 2486. The Court held that union opt-out requirements violate the First Amendment and that unions must use opt-in rules—i.e., receive

affirmative consent from employees—before charging them money they have no legal obligation to pay. *Id.* at 2486. Now that the U.S. Supreme Court has clarified that the First Amendment prohibits unions from imposing opt-out requirements in *Janus*, the RLA cannot permit opt-out requirements without violating the First Amendment. *Ellis,* 466 U.S. at 447-48; *Street*, 367 U.S. at 750, 774 (1961); *Shea v. Machinists*, 154 F.3d 508, 513 (5th Cir. 1998) ("At the heart of the *Street* opinion was the concern over the employees' First Amendment rights under a union shop agreement.").

41. Although in *Street*, the U.S. Supreme Court suggested that RLA Section 2, Eleventh permits unions to impose opt-out requirements on nonmembers, 367 U.S. 740, 750, 774 (1961), the Court clarified in *Knox*, 567 U.S. at 312-13, and confirmed in *Janus,* that *Street* is dicta, and that it is no longer good law, if it ever was. *Janus*, 138 S. Ct. at 2486.

42. Defendant ALPA violated the RLA, Section 2, Third, Fourth, and Eleventh, 45 U.S.C. § 152, when it required Plaintiff Popp and the class to affirmatively opt-out of paying union fees unrelated to its spending on collective bargaining, including its involvement in politics and other nonchargeable activities.

43. Defendant ALPA caused Plaintiff Popp and the class to suffer monetary and non-monetary harms when it violated the Railway Labor Act by requiring them to send a notice to ALPA objecting to paying fees unrelated to collective bargaining.

**Prayer for relief:** Plaintiff requests that this Court render judgment on **Count I** against Defendant ALPA and:

    a)   Enter an order, as soon as practical, certifying this case as a class action, appointing Plaintiff Popp as class representative, and appointing Attorneys Chappell, Jennings, and Beutler, as class counsel.

b)  Declare that union requirements for an employee to object (opt-out) to paying union fees unrelated to union spending on collective bargaining activities violates the RLA.

c)  Declare that the opt-out requirements in ALPA's forced fees policy violate the RLA.

d)  Grant equitable relief by permanently enjoining Defendant ALPA from charging nonmembers for anything more than their pro rata share of the union's collective bargaining spending unless the nonmembers affirmatively consent (opt-in) to support ALPA's political, ideological and other non-bargaining spending.

e)  Grant equitable relief by requiring ALPA to remove opt-out requirements from its forced fees policies.

f)  Grant a permanent injunction mandating that Defendant ALPA inform all employees within RLA bargaining units for which it is the exclusive bargaining representative of the final Order of this Court.

g)  Award Plaintiff and the class damages, compensatory and nominal, for all of the monetary loss they suffered, including the noncharageable amount paid, as the result of ALPA's illegal opt-out requirements.

h)  Retain jurisdiction of this action for a reasonable period after entering a final judgment to ensure that Defendant ALPA complies with the Orders of this Court.

i)  Grant further relief as the Court finds necessary and proper.

## COUNT II
### (Alternative Violation - Compulsory Opt-Out Requirements Violate the First Amendment)

44. The facts alleged above are incorporated here by reference.

45. The First Amendment to the U.S. Constitution protects the associational and free speech rights of individuals.

46. The First Amendment constrains a union's actions when it enforces a forced fees

11

agreement that receives immunization from state right to work laws due to the RLA's preemption of those laws. *Shea v. Machinists*, 154 F.3d 508, 513 n.2 (1998) ("The U.S. Supreme Court has found that there is sufficient state action to implicate the First Amendment in RLA cases because the RLA expressly states that it supersedes state law, and hence federal law is the authority through which private rights are lost.") (citing *Ry. Emps.' Dep't v. Hanson,* 351 U.S. 225 (1956)).

47. Unions subject to constitutional constraints violate the First Amendment when they require employees to opt-out of paying union fees that they have no legal obligation to pay. The only choice structure consistent with the First Amendment is one where unions seek employees' affirmative consent to paying fees they otherwise have no legal obligation to pay—i.e., an "opt-in" system. *Janus v. AFSCME, Council 31*, __ U.S.__ 138 S. Ct. 2448, 2486 (2018).

48. Although in *Street v. Machinists*, the U.S. Supreme Court suggested that the First Amendment permits unions to impose opt-out requirements on nonmembers, 367 U.S. 740, 750, 774 (1961), the Court clarified in *Knox v. SEIU, Local 1000*, 567 U.S. 298, 312-13 (2012), and confirmed in *Janus,* that *Street* is dicta and no longer, if it ever was, good law. *Janus*, 138 S. Ct. at 2448, 2486.

49. Thus, if the RLA, 45 U.S.C. § 152, Eleventh, is construed to allow unions to impose opt-out requirements, then the statute as construed violates employees' First Amendment free speech and association rights.

50. Defendant ALPA's forced fees agreement with JetBlue was made based on the RLA authorizing unions and employers to enter those types of agreements. Thus, the First Amendment constrains any requirements that ALPA imposes on employees when it maintains and enforces a forced fees agreement.

51. Defendant ALPA violated the First Amendment free speech and associational rights of Plaintiff Popp and the class when it forced them to affirmatively opt-out of paying union fees unrelated to its spending on collective bargaining. *Janus*, 138 S. Ct. at 2448, 2486.

52. Defendant ALPA caused Plaintiff Popp and the class to suffer monetary and non-monetary harms when it violated the First Amendment by imposing the opt-out requirements on them.

**Prayer for relief:** Plaintiff requests that this Court render judgment on **Count II** against Defendant ALPA and:

a)  Enter an order, as soon as practical, certifying this case as a class action, appointing Plaintiff Popp as class representative, and appointing Attorneys Chappell, Jennings, and Beutler, as class counsel.

b)  Declare that union requirements for an employee to object (opt-out) to paying union fees unrelated to union spending on collective bargaining activities violates the First Amendment.

c)  Declare that the opt-out requirements in ALPA's forced fees policy violate the Frist Amendment.

d)  Grant equitable relief by permanently enjoining Defendant ALPA from charging nonmembers for anything more than their pro rata share of the union's collective bargaining spending unless the nonmembers affirmatively consent (opt-in) to support ALPA's political, ideological and other non-bargaining spending.

e)  Grant equitable relief by requiring ALPA to remove opt-out requirements from its forced fees policies.

f)  Grant a permanent injunction mandating that Defendant ALPA inform all employees

within RLA bargaining units for which it is the exclusive bargaining representative of the final Order of this Court.

g)   Award Plaintiff and the class damages, compensatory and nominal, for all of the monetary loss they suffered, including the nonchargeable amount paid, as the result of ALPA's illegal opt-out requirements.

h)   Retain jurisdiction of this action for a reasonable period after entering a final judgment to ensure that Defendant ALPA complies with the Orders of this Court.

i)   Grant further relief as the Court finds necessary and proper.

**COUNT III**
**(Compulsory Opt-Out Requirements Breach the Duty of Fair Representation)**

53. The facts alleged above are incorporated here by reference.

54. Under the RLA, a union acting as the exclusive representative of a craft/class of employees owes a fiduciary duty of fair representation to all the employees whom it represents, members and nonmembers alike. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991). That duty is "akin to the duty owed by other fiduciaries to their beneficiaries," such as the "duty a trustee owes to trust beneficiaries," or the duty an "attorney" owes to a "client." *Id.* at 74.

55. [A] union breaches its duty of fair representation if its actions are either "'arbitrary, discriminatory, or in bad faith.'" *Id.* at 67 (quoting *Vaca v Sipes*, 386 U.S. 171, 190 (1967)).

56. Unions breach the duty of fair representation when they impose burdensome and arbitrary requirements for employees to exercise their statutory or constitutional rights. *Shea v. Machinists*, 154 F.3d 508, 515 (5th Cir. 1998).

57. ALPA owed a duty of fair representation to Plaintiff Popp and the class.

58. ALPA breached that duty when it acted arbitrarily by requiring Plaintiff Popp and the class, to affirmatively object ("opt-out") to paying union fees spent on nonchargeable activities

14

that they had no legal obligation to pay. These opt-out requirements arbitrarily burden the opportunity of Plaintiff Popp and the class to freely exercise their right not to pay union fees unrelated to collective bargaining. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 312 (2012).

59. Although in *Machinists v. Street*, the U.S. Supreme Court suggested that the First Amendment permits unions to impose opt-out requirements on nonmembers, 367 U.S. 740, 750, 774 (1961), the Court clarified in *Knox v. SEIU, Local 1000*, 567 U.S. 298, 312-13 (2012), and confirmed in *Janus,* that *Street* is dicta and no longer, if it ever was, good law. *Janus*, 138 S. Ct. at 2448, 2486.

60. ALPA's opt-out requirements caused Plaintiff Popp and the class to suffer monetary and non-monetary harms.

**Prayer for relief:** Plaintiff requests that this Court render judgment on **Count III** against Defendant ALPA and:

a) Enter an order, as soon as practical, certifying this case as a class action, appointing Plaintiff Popp as class representative, and appointing Attorneys Chappell, Jennings, and Beutler, as class counsel.

b) Declare that union requirements for an employee to object (opt-out) to paying union fees unrelated to union spending on collective bargaining activities breaches the  duty of fair representation.

c) Declare that ALPA breached the duty of fair representation by maintaining the opt-out requirements in its forced fees policy.

d) Grant equitable relief by permanently enjoining Defendant ALPA from charging nonmembers for anything more than their pro rata share of the union's collective bargaining spending unless the nonmembers affirmatively consent (opt-in) to support ALPA's political,

ideological and other non-bargaining spending.

e) Grant equitable relief by requiring ALPA to remove opt-out requirements from its forced fees policies.

f) Grant a permanent injunction mandating that Defendant ALPA inform all employees within RLA bargaining units for which it is the exclusive bargaining representative of the final Order of this Court.

g) Award Plaintiff and the class damages, compensatory and nominal, for all of the monetary loss they suffered, including the nonchargeable amount paid, as the result of ALPA's illegal opt-out requirements.

h) Retain jurisdiction of this action for a reasonable period after entering a final judgment to ensure that Defendant ALPA complies with the Orders of this Court.

i) Grant further relief as the Court finds necessary and proper.

[SIGNATURE PAGE FOLLOWS]

DATED: May 23, 2019                    Respectfully submitted,


**/s/ Mark J. Beutler**
Mark J. Beutler (Florida Bar No. 0023400)
Attorney E-mail address: mjb@mjbpa.com
Law Offices of Mark J. Beutler, P.A
One Datran Center, Suite 1500
9100 South Dadeland Boulevard
Miami, FL  33156
Telephone:  (786) 497-7710
Fax: (786) 513-4651

**/s/ Jeffrey D. Jennings**
Jeffrey D. Jennings (*pro hac vice* to be filed)
Attorney E-mail address: jdj@nrtw.org
Milton L. Chappell (*pro hac vice* to be filed)
Attorney E-mail address: mlc@nrtw.org
  c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Telephone: (703) 321-8510
Fax: (703) 321-9319

*Attorneys for Plaintiff and Proposed Class*

# EXHIBIT A



**ADMINISTRATIVE MANUAL**

case shall dues be assessed on retroactive pay for periods during which the member was on probation.

10.   ALPA POLICIES AND PROCEDURES APPLICABLE TO AGENCY FEES
      SOURCE - Executive Committee August 1978; AMENDED - Executive Committee November 1979; Executive Committee January 1986; Executive Committee November 1987; Executive Committee by Mail Ballot June 1992; Executive Council May 1994; Executive Board May 2004; Executive Board May 2013

### OBJECTION PROCEDURES

a.   Nonmembers who are required by contract to pay an agency fee to ALPA as a condition of their employment may object to the use of their fees for purposes that are not germane to collective bargaining.  The procedure for submitting an objection is described in paragraph b below.  Any nonmember who submits an objection in the proper manner will be granted an adjustment in his/her agency fee amount, by reduction and/or rebate, to ensure that his/her payment will be used exclusively for purposes germane to collective bargaining.   ALPA shall not require any nonmembers (whether objectors or not) to pay any assessment that ALPA (in consultation with its legal counsel) determines is not germane to collective bargaining, although they may voluntarily pay those assessments.

b.   A nonmember wishing to object must send a written notice to the Vice President-Finance.  Each objector must send a separate notice.  The notice must contain the objector's name, address and ALPA identification number.  This written notice may be sent to the Vice President–Finance in two ways:  (1) via regular mail or certified mail (which is strongly encouraged to show proof of receipt) to the following address: Vice President–Finance, Air Line Pilots Association, 1625 Massachusetts Avenue, N.W., Washington, DC 20036; or (2) via electronic mail from his or her personal e-mail account as recorded in ALPA records to membership@alpa.org.  However, such objections sent by e-mail or regular mail will be recognized only if ALPA acknowledges receipt of the objection, and ALPA strongly encourages the objecting nonmember to contact the Membership Services Department at (888) 359-2572 (option 3, option 3) if he or she does not receive such an acknowledgement.

c.   A notice of objection may be submitted at any time during the calendar year for which the objection is to apply.  An objection will be valid only for the calendar year in which it is made except that it shall be considered a permanent and ongoing objection if either:  (1) the objection states that it is a permanent or continuing objection or uses similar language sufficient to notify the Association of the objector's intent to extend the objection beyond the current calendar year; or (2) the objector has submitted written objections in two consecutive calendar years in which he or she has been required to pay agency fees as a condition of employment.

d.   No objection under these procedures will be accepted from an ALPA member, and no ALPA member will be eligible for a dues reduction or rebate.  ALPA members may express their objections to ALPA expenditures through the democratic processes available to them under ALPA's Constitution.

### CALCULATION OF GERMANE AND NONGERMANE EXPENDITURES

e.   The Finance Department shall maintain ALPA's financial records in a manner that will permit a reasonably accurate identification of those categories of expenditure

*ADMINISTRATIVE MANUAL*

that are germane to collective bargaining and those that are not.   ALPA's independent auditors will conduct an annual review of the operation of ALPA's system for recording expenses and allocating them to functional categories.   After the close of each year, the Finance Department, under the direction of the General Manager and with the advice of the Legal Department, will prepare a "Statement of Germane and Nongermane Expenses" which will disclose, in reasonable detail, the year's expenditures, segregating those that were germane to collective bargaining from those that were not.

f.   The Statement of Germane and Nongermane Expenses will be completed immediately after completion of the Association's annual audit.   Promptly thereafter, the Vice President–Finance/Treasurer will send the Statement of Germane and Nongermane Expenses to each non-member who is required to pay an agency fee to ALPA.   Each such nonmember shall also receive a copy of these Policies and Procedures.   The Statement of Germane and Nongermane Expenses will also be sent to each member of ALPA's Board of Directors.

## ESCROW ACCOUNT

g.   ALPA shall deposit in an interest-bearing escrow account each year an amount equal to the following:   (1) 1.5 times ALPA's estimate of its total agency fee rebate obligation for that year; plus (2) 1.5 x (anticipated revenue from assessments for the year) x (the number of objectors ALPA-wide for the current year)/(the number of pilots subject to dues and service charge obligations to ALPA).   ALPA shall base its estimate of the amounts to be held in escrow on the previous years' experience, budget projections for the current year, and any other available information.   All rebates shall be paid out of the escrow account.

## FEE REDUCTION AND REBATE PROCEDURE

h.   Beginning in 1994, the following procedures shall apply:

(1)   Monthly Billing Statement Payers

Any objector who is paying monthly installments based on a monthly Statement of Account will receive an estimated billing credit against his/her current year's estimated agency fee.   This estimated billing credit will be equal to the product obtained by multiplying the estimated agency fee billing by the percentage of nongermane expenses shown on the most recent available Statement of Germane and Nongermane Expenses.   ALPA will endeavor to credit the objector's account within 1 month of the date objection is received.   The billing of subsequent monthly installments will be reduced in consideration of the estimated billing credit.

In the following year, after the Statement of Germane and Nongermane Expenses has been completed, ALPA will adjust the estimated billing credits based on (1) the actual percentage of nongermane expenses for the objection year and (2) the actual reported income of the objector.   If the estimated billing credits were insufficient, ALPA will issue additional credits.   If the estimated billing credits were too large, the objectors will be billed for the excess amount.

***ADMINISTRATIVE MANUAL***

(2)     Checkoff Payers

Any objector who is current and pays his/her entire agency fee obligation by means of payroll checkoff will receive a rebate, with interest, in the following year after completion of the Statement of Germane and Nongermane Expenses.  This rebate will be based on the actual percentage of nongermane expenses for the objection year.  However, if any delinquent obligation exists on the objector's account, a billing credit without interest will be issued in place of a rebate.

(3)     Income Information

If the Association does not receive a statement of the objector's income for the objection year from his/her airline before processing final adjustments and rebates, the objector will be asked to provide a W-2 form for that year.  No rebate or final adjustment will be issued in the absence of complete and accurate income information for the objection year.

## ARBITRATION PROCEDURE

i.      Any pilot who believes that ALPA has made an error in its application to him/her of the policies and procedures set forth above may request that his/her complaint be submitted to an independent arbitrator for hearing and decision.  A request for arbitration shall contain a brief statement of the issue or issues to be arbitrated, and must be sent to the Vice President of Finance of ALPA by certified mail, return receipt requested, no later than 30 days after the event that is the basis for the complaint.  If the pilot so requests, ALPA will place in escrow, pending the outcome of the arbitration, the portion of the pilot's agency fee that ALPA determines to be reasonably in dispute.

j.      Unless the parties otherwise agree, the selection of the arbitrator, and the procedures of the arbitration, will be governed by the American Arbitration Association Rules for Impartial Determination of Union Fees.  Each side will bear its own costs of arbitration, including (but not limited to) any travel costs, lost pay and attorney's fees.   ALPA will pay all fees and expenses of the American Arbitration Association and the arbitrator, unless the pilot or pilots participating in the arbitration voluntarily elect to share those fees and expenses.

k.     To the extent permitted by law, the decision of the arbitrator shall be final and binding on the parties.

11.   DELINQUENT ACCOUNTS COLLECTION
       SOURCE - Executive Board May 1969; AMENDED - Board by Mail Ballot June 1990

In administering the arrangements for and the collection of delinquent accounts, the member will be expected to bring his account up to date within the maximum time period of five years from the date of establishment of the Arrangement Plan, or by twelve months prior to normal retirement from his airline, whichever date is earliest.  The total back dues obligations shall be repaid to ALPA in equal installments, or multiple installments, based on the five year or twelve months prior to retirement date, whichever is applicable, with a minimum monthly payment of $1.00 per month for each $1,000.00 of annual airline income on the outstanding obligation, plus the ALPA finance charge specified in Article IX, Section 9.  Such payments shall be in addition to other regular ALPA financial