**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 19-cv-61298-SINGHAL**

CHRISTIAN POPP,

      Plaintiff,

v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL,

      Defendant.

_____/

<u>**ORDER OF DISMISSAL**</u>

    **THIS CAUSE** is before the Court on Defendant's Motion to Dismiss (DE [28]) the Amended Complaint. Following briefing in opposition and in support, re-briefing on supplemental authority, and additional briefing on the Court's sua sponte concern regarding standing, the Court is fully advised in the premises. This matter is now ripe for review and, for the following reasons, the motion to dismiss is **GRANTED**.

**I.      BACKGROUND**

    Plaintiff Christian Popp ("Popp") is a pilot for JetBlue Airways ("JetBlue"). *See* Am. Compl. ¶ 8 (DE [23]). Defendant Air Line Pilots Association, International ("ALPA") is the labor union with exclusive bargaining power for employees of JetBlue. *Id.* ¶ 7. Popp is not a member of ALPA, nor does he want to be. *See id.* ¶¶ 8, 18. Despite this, each pay period, ALPA charges him and other nonmembers "dues-equivalent fees," which are automatically deducted from their paychecks. *Id.* ¶ 16. If he or other nonmembers complies with ALPA's "opt-out requirements," that automatic deduction can be reduced a certain amount to ensure the union does not collect "nonchargeable" dues, specifically

monies for ALPA's political activities.  *Id.*  But, at a minimum, members and nonmembers alike are automatically charged each pay period "chargeable" dues—and they cannot opt out of *these* charges.  *Id.* ¶ 13.

In December 2018, Popp sent a letter to ALPA opting out of paying the unrelated fees.  *Id.* ¶ 19.  He sent this opt-out letter via United Parcel Service ("UPS") and paid $33.01.  *Id.*  Ten days later, he received a confirmation email acknowledging his objection and confirming he would not be charged for the so-called "nonchargeable" dues.  *Id.* ¶ 20.

On May 23, 2019, Popp filed this action against ALPA on three counts.  Count I alleges ALPA's opt-out requirement violates the Railway Labor Act ("RLA"), *see* 45 U.S.C. § 152.  Count II alleges the opt-out requirement violates the First Amendment.  Finally, Count III alleges the opt-out requirement is a breach of the duty of fair representation.  In the complaint, he sought declaratory relief and injunctive relief.  After ALPA moved to dismiss the complaint (DE [17]), Popp amended the complaint without the claims for declaratory and injunctive relief, seeking only compensatory and nominal damages.  ALPA moved to dismiss the amended complaint, which is the subject of this order.

## II.   DISCUSSION

In disputes over unions' collecting dues, case law instructs the Court first to consider whether the union involved in the matter is a public-sector union or a private-sector union.  Next—and almost equally as important—the analysis shifts to the purpose for which the union seeks to collect the money at issue.  There are two categories of money involved in union disputes.  In labor-law lexicon, these two categories have inconsistent names.  In an attempt to bring some consistency to an otherwise inconsistent

system of nomenclature, the Court will use those names used by the Supreme Court: Monies collected by a union that are "germane" to its collective-bargaining functions are referred to as "chargeable"; those that are used to further the union's "political and ideological projects" are "nonchargeable."[1]

The struggle invariably involves *non*members challenging the union's authority to automatically deduct monies from their paychecks.  For a little over forty years, under the framework of *Abood v. Detroit Board of Education*, 431 U.S. 209, 235 (1977), the Supreme Court held that public-sector unions could automatically collect from nonconsenting nonmembers *chargeable* expenditures and not offend the U.S. Constitution.  In 2018, the Supreme Court overruled *Abood*, finding its precedent "unworkable" and determining the "line between chargeable and nonchargeable union expenditures has proved to be impossible to draw with precision."  *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2481 (2018).  Now, under post-*Janus* precedent, with no distinction between "chargeable" and "nonchargeable" fees, "State and public-sector unions may no longer extract agency fees from nonconsenting employees."  *Id.* at 2486.

The matter currently before the Court is of first impression for this district: Whether *private*-sector unions can automatically collect chargeable expenses from nonconsenting nonmembers.  In other words, the central issue in this case is whether *Janus* applies to *private*-sector unions.  But this case is even further complicated by the fact that, because

---

[1] *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2461 (2018).

ALPA is a private-sector union, Popp also challenges its opt-out requirement under the RLA—statutory authority—in addition to under constitutional grounds.

While, again, this appears to be a matter of first impression, there is some case law from which the Court can glean guidance.  In *Railway Employee's Department v. Hanson*, 351 U.S. 225, 238 (1956), the Supreme Court upheld the constitutionality of the RLA and determined "the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work is within the power of Congress under the Commerce Clause and does not violate either the First or the Fifth Amendments." Interestingly, in *Hanson*, the Supreme Court upheld the RLA's constitutionality despite the language that requires all employees to become "members" of the union.  351 U.S. at 238.  In *IAM v. Street*, 367 U.S. 740 (1961), and *Ellis v. Brotherhood of Railway, Airline & S.S. Clerks*, 466 U.S. 435 (1984), the Supreme Court reaffirmed these principles as they related to the *private* sector.

At least one district court has unequivocally rejected the same position put forward by Popp here when the District of New Jersey flatly recognized, "*Janus* did not overrule *Hanson*" and that "*Janus* applies to public sector employees, not private sector employees." *Rizzo-Rupon v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 2019 WL 6838001, at *3 (D.N.J. Dec. 16, 2019), *appeal filed*, No. 20-1106 (3d Cir. Jan. 16, 2020).  Perhaps even more clearly, the District of New Jersey stated: "In short, *Janus* stands for the limited proposition that when a government entity and labor organization agree to require government employees to pay agency fees, the First Amendment is implicated in ways dramatically distinct from when agency fees are agreed to in the private sector."  *Id.* (emphasis added).

The Court appreciates the fact that *Rizzo-Rupon* is not directly on point.  Upon reading it several times, the Court recognizes there did not appear to be an opt-out requirement there.  Further, the Court understands New Jersey does not have a "right-to-work" law, as Florida does.  Popp focuses on this distinction in his response brief.  However, the Court cannot say this difference between New Jersey and Florida law compels a different result in the absence of the Supreme Court extending *Janus* to private-sector unions.

In sum, the Court agrees with *Rizzo-Rupon* in that *Janus* did not overturn *Hanson*.  Thus, the compulsory fees that Popp was required to pay to ALPA—*chargeable* fees—did not violate the RLA.  And there is no case law whatsoever from the Supreme Court to instruct the Court that it violates the U.S. Constitution.

Even if *Hanson* and *Rizzo-Rupon* were not dispositive, the Court determines that Popp lacks standing to challenge the collection of the chargeable fees because he cannot plead an injury-in-fact.  After briefing on the motion to dismiss closed, the Court ordered additional briefing, instructing both parties to address the issue of whether Popp had standing to bring this action.  *See* Order (DE [51]).

"In every federal case, the party bringing the suit must establish standing to prosecute the action."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  Article III of the United States Constitution requires three elements that form the "irreducible constitutional minimum" for standing: (1) an injury in fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  An injury "must be . . . distinct and palpable, and not abstract or conjectural or hypothetical."  *Id.*  A corollary of the requirement that an injury not be hypothetical is that the injury must be

"fairly traceable to the challenged action." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). It follows that a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fear of hypothetical future harm that is certainly not impending." *Id.*; *see also Swann v. Sec'y, State of Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("[C]ontroversy is not justiciable when a plaintiff independently caused his own injury.")

In *Schumacher v. Inslee*, 2019 WL 330167, at *1 (W.D. Wash. Jan. 25, 2019), the plaintiffs were in-home medical care providers, remunerated through the state's Medicaid program. Although *Schumacher* involved public-sector unions, the facts are otherwise nearly identical. *Id.* The plaintiffs brought a class action for declaratory and injunctive relief, seeking to declare the existing state statute unconstitutional and the collective bargaining agreement violative of the First Amendment. *Id.* at *2. The court, however, determined the plaintiffs lacked standing because the union already adapted to *Janus* and moved from an opt-out system to an opt-in system. *Id.* The court dismissed the claims because the plaintiffs faced an "absence of any negative consequences." *Id.*

Here, Popp cannot face any negative consequences either. He has already opted out of the nonchargeable fees and, as discussed above, ALPA can lawfully deduct chargeable fees. In other words, the only injury he could seek redress for—the nonchargeable fees—he has already opted out of. The Court cannot redress the harm of ALPA deducting nonchargeable fees from Popp because he does not pay any. And the Court cannot redress the harm of ALPA deducting chargeable fees because it is allowed to do so.

### III.     CONCLUSION

Popp cannot state a claim against ALPA.  Under the current state of Supreme Court case law, ALPA is lawfully entitled to collect chargeable fees from Popp because it is a private-sector union.  Further, Popp had already opted out of ALPA collecting nonchargeable fees—the only injury for which Popp would have been able to seek redress.  Accordingly, Popp's claims must be dismissed.

The Clerk of Court is directed to **CLOSE** this case.  Any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida this 24th day of March 2020.

RAAG SINGHAL
**UNITED STATES DISTRICT JUDGE**

Copies to counsel via CM/ECF